# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| RAYMOND HERNANDEZ and § <br> VENITA BETH HERNANDEZ, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> RUSH ENTERPRISES, INC., ET AL., § <br> § <br> *Defendants*. § | Civil Action No. 4:19-cv-638 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Rush Enterprises, Inc.'s Motion for Summary Judgment (Dkt. #86). Having considered the Motion and the relevant pleadings, the Court finds that it should be granted in part and denied in part.

### BACKGROUND

This suit concerns allegations by Plaintiff Raymond Hernandez ("Hernandez") that he suffered racially based discrimination in the workplace. In 2015, Rush Enterprises, Inc. and Rush Truck Centers of Texas, LP ("Rush") hired Hernandez, a Hispanic male, as a Level 2 Mechanic. Hernandez initially worked at a facility owned and operated by Schlumberger Limited and Schlumberger Technology Company ("Schlumberger") in Denton. After working there for six months, Hernandez was transferred to a Rush facility in Irving, where he worked for four months. Hernandez was then transferred back to the Schlumberger facility in Denton, where he worked until Rush reassigned him to a different facility in early 2019. Employees of Rush, Schlumberger, and Holt Texas, Ltd. d/b/a Holt Cat ("Holt") were present at the Schlumberger worksite during Hernandez's tenure there. Roughly a year and a half into this stint at the Denton facility, Hernandez was promoted to the position of Lead Man.

Hernandez alleges that he consistently endured harassment from his co-workers based on his race, and he asserts that he reported such harassment to his supervisors. His allegations detail an unsuitable workplace climate, particularly unfavorable towards those of Hispanic descent. Things came to a head on January 16, 2019, when Hernandez entered the break room at the Denton facility and a physical altercation occurred between Hernandez and Holt employee Jeremy Stallings ("Stallings"). The incident culminated with Stallings shoving Hernandez to the ground, which caused Hernandez's hip to fracture. Hernandez subsequently went to the hospital and underwent hip replacement surgery.

Following the January 16 altercation, Schlumberger banned Hernandez and Stallings from the Denton facility, and Rush assigned Hernandez to a different location. At the new location, Hernandez's title reverted to Level 2 Mechanic.

On September 3, 2019, Hernandez and his wife filed suit against Rush, Schlumberger, and Holt for violations of federal employment-discrimination law (Dkt. #1). On August 20, 2020, Rush filed its Motion for Summary Judgment (Dkt. #86), currently before the Court. On September 10, 2020, Plaintiffs filed their response (Dkt. #109).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Dispute over a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th

Cir. 2019). Trial courts "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020).

The party moving for summary judgment bears the initial burden of identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant satisfies this burden as to a claim or defense for which summary judgment is sought, evidence must be offered that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may discharge the burden by demonstrating the absence of evidence supporting the nonmovant's case. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried this initial burden, the nonmovant "must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden—reciting "barebones, conclusory, or otherwise-unsupported assertions" is simply insufficient. *Hassen v. Ruston Louisiana Hosp. Co., L.L.C.*, 932 F.3d 353, 355–56 (5th Cir. 2019); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). And courts are not required "to sift through the record in search of evidence to support a

party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Rather, to have a request for summary judgment dismissed, a nonmovant must show with "'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). Courts must "'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

## ANALYSIS

Hernandez alleges that Rush committed racial discrimination against him and, as a result, now seeks to recover under 42 U.S.C. § 1981. Tracing its origins to the Civil Rights Act of 1866, § 1981 provides that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Making and enforcing contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). While similar to "the many statutes that combat racial discrimination," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006), § 1981 differs from other antidiscrimination laws in key ways.[1] Relevant here, § 1981 shields

---

[1] Even so, courts look to Title VII and 42 U.S.C. § 1983 claims to guide § 1981 analysis. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) ("The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983.").

4

those discriminated against by state *or* private actors—but only as to discrimination concerning "race or alienage." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986).

To succeed on a § 1981 claim, intentional discrimination must be demonstrated. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). "Intentional discrimination can be established through either direct or circumstantial evidence." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("[O]nly the burden of production ever shifts to the defendant, never the burden of persuasion."). Section 1981 provides several theories of liability under which plaintiffs may recover. Hernandez asserts three here: disparate treatment, hostile work environment, and retaliation.[2] The Court addresses each in turn.

## I. Racial Discrimination – Disparate Treatment

To show disparate treatment under § 1981, "a plaintiff must prove that he or she was subject to an 'adverse employment action'—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). "Actionable adverse employment actions are generally limited to tangible employment

---

[2] Retaliation claims are cognizable under § 1981. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354–55 (2013) (finding that "42 U.S.C. § 1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it" (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008))).

actions that constitute a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 835 (E.D. Tex. 2014) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)), *aff'd*, 640 F. App'x 393 (5th Cir. 2016).

Disparate-treatment claims can be substantiated by direct or circumstantial evidence. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212–13 (2015). Direct evidence proves disparate treatment if the evidence is believed without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Because Hernandez does not allege direct evidence of disparate treatment and offers only circumstantial evidence to that effect, the Court turns to the *McDonnell Douglas* burden-shifting framework. *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997).

The plaintiff bears the initial burden under *McDonnell Douglas*—a *prima facie* case of discrimination must be made. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). To do so, Hernandez must demonstrate that he (1) belonged to a protected class, (2) was otherwise qualified for his position, (3) suffered some adverse employment action by Rush, and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.

"If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason'" for the adverse

6

employment action, "which 'must be legally sufficient to justify a judgment for the defendant.'" *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (footnote omitted) (first quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); and then quoting *Burdine*, 450 U.S. at 255). If the employer carries this burden, "the analysis moves to the third *McDonnell Douglas* step, where 'the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination.'" *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (cleaned up) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995)); *see Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (explaining that once the burden shifts back to the employee to prove pretext, the "*McDonnell Douglas* framework . . . fall[s] away, 'and the issue becomes discrimination *vel non*'" (quoting *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009))).

Hernandez must initially offer a *prima facie* case of disparate treatment. It is uncontested that Hernandez belongs to a protected class and was otherwise qualified for his employment position. Hernandez offers that his reassignment, along with changes to his job responsibilities and a decrease in pay, constitutes an adverse employment action (*see* Dkt. #109 at p. 6), which suffices at the *prima facie* stage to satisfy this element.[3] *See Thompson*, 764 F.3d at 504. Finally, a Caucasian employee of Rush, Matthew McClung, replaced Hernandez as lead man at the Denton facility (Dkt. #109 at p. 5). Therefore, Hernandez has successfully made out a *prima facie* case of racial disparate treatment under § 1981.

Now the burden of production shifts to Rush to advance a legitimate, nondiscriminatory reason explaining Hernandez's reassignment. Rush offers that because Schlumberger banned

---

[3] The Court recognizes that Rush disputes Hernandez's characterization of the reassignment (Dkt. #86 at pp. 26–27). But Hernandez's burden at the *prima facie* stage is "not onerous," *Burdine*, 450 U.S. at 253, and certainly "not as burdensome as succeeding on 'an ultimate finding of fact as to' a discriminatory employment action," *Young*, 135 S. Ct. at 1354 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978)).

Hernandez from the Denton facility, the only choices available to it were to fire Hernandez or reassign him to a different location (Dkt. #86 at pp. 13–14). Rush chose the latter. This explanation suffices as a legitimate, nondiscriminatory reason for Hernandez's reassignment.

The burden of production now shifts back to Hernandez to show that the reason offered for reassigning Hernandez was a pretext for discrimination. After carefully reviewing the record and the arguments presented, the Court is persuaded that Hernandez has met his burden to demonstrate that a genuine issue of material fact exists. The Court therefore denies Rush's motion for summary judgment as to Hernandez's § 1981 claim for disparate treatment.

## II. Hostile Work Environment

Section 1981 precludes employers from requiring employees "to work in a discriminatorily hostile or abusive environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also EEOC v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc) ("The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination." (internal quotation marks omitted) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (Thomas, J., dissenting))). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quoting *Harris*, 510 U.S. at 21). To prevail on a § 1981 claim for hostile work environment, Hernandez must demonstrate that (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in that protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) Rush knew or should have known about the harassment and failed to take prompt remedial action. *See West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020). "For conduct to be considered sufficiently

severe or pervasive, it 'must be both objectively and subjectively offensive.'" *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617–18 (5th Cir. 2020) (quoting *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007)); *see Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989) ("[C]ourt[s] should review the pattern and frequency of the harassment and determine whether a reasonable person would feel that the environment was hostile throughout the period that formed the basis of the plaintiff's claim."). Ultimately, "a plaintiff's hostile environment claim 'is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant.'"[4] *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)).

Because the "term, condition, or privilege" element is dispositive here, the Court does not analyze the other aspects of the hostile work environment claim and focuses on the "term, condition, or privilege" element.[5]

To determine if a workplace environment is hostile or abusive, "courts closely consider the 'frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001) (quoting *Harris*, 510 U.S. at 21); *see Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007) ("[C]ourt[s] must look to the totality of the circumstances . . . ."). "[N]o single factor is

---

[4] In addition to race-based hostile work environment claims, the Court also looks to hostile work environment claims based on sex for analytical guidance. *See Faragher*, 524 U.S. at 787 n.1 ("Although racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, . . . there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment."); *see Halstead*, 916 F.3d at 417.

[5] In particular, though, the Court is not entirely persuaded that Hernandez has satisfied his burden to prove that the harassment he endured was based on his membership in a protected class. The harassment asserted appears to be predominantly race-neutral with instances of racial elements cropping up occasionally (*see, e.g.*, Dkt. #135, Exhibit B at p. 32:6–20). The Court assumes without deciding that Hernandez satisfies this element because the hostile work environment claim is more readily disposed of as a matter of law on the "term, condition, or privilege" element.

determinative," though, *West*, 960 F.3d at 742, and "[w]orkplace conduct is not measured in isolation," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Moreover, "hostile work environment jurisprudence is not designed to 'prohibit all verbal or physical harassment in the workplace.'" *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 443 (5th Cir. 2011) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 77 (1998)). "Merely offensive conduct is not actionable." *Collier v. Dall. Cnty. Hosp. Dist.*, No. 3:17-CV-3362-D, 2019 WL 2394225, at *12 (N.D. Tex. June 6, 2019), *aff'd*, 805 F. App'x 306 (5th Cir. 2020); *see Lopez v. Target Corp.*, 676 F.3d 1230, 1235 (11th Cir. 2012) (explaining that "§ 1981 is not a general civility code"). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

While no one factor is dispositive, *West*, 960 F.3d at 742, and the harassment need only be severe *or* pervasive, *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005), the absence of summary-judgment evidence supporting the "term, condition, or privilege" element of Hernandez's claim for hostile work environment proves fatal. In examining the four factors relevant to the inquiry into this element, the Court finds only one factor to favor Hernandez— pervasiveness.[6] Otherwise, the record at summary judgment is practically devoid of evidence to support the other three factors.

Hernandez consistently claims that the racially based harassment was severe (Dkt. #16 at pp. 5, 12–13; Dkt. #109 at pp. 2; Dkt. #109, Exhibit A at p. 2). This is only half of the equation—

---

[6] Much of the evidence demonstrating the pervasiveness of the alleged harassment comes from declarations by Hernandez and others generally stating as much and providing little concrete detail other than it being "daily" (*see, e.g.*, Dkt. #135, Exhibit B at p. 30:2–11). Hernandez also states that he regularly reported the harassment to his supervisors during his tenure at the Denton facility (*see, e.g.*, Dkt. #135, Exhibit AA at p. 4). But the Fifth Circuit

10

he may "subjectively perceive the harassment as sufficiently severe or pervasive." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris*, 510 U.S. at 17). Yet in light of Fifth Circuit precedent, Hernandez has not demonstrated his perception to be "objectively reasonable."[7] *Id.* The harassment described in cases in which hostile work environments have been identified is simply in a different league of severity than those alleged by Hernandez. *See, e.g.*, *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Hale v. Tex. Dep't of Crim. Just.*, No. 7:18-CV-097-M-BQ, 2019 WL 7500593, at *6 (N.D. Tex. Dec. 3, 2019), *report and recommendation adopted*, No. 7:18-CV-097-M, 2020 WL 95653 (N.D. Tex. Jan. 8, 2020); *Pfau v. Mnuchin*, No. 1:18-CV-422-RP, 2019 WL 2124673, at *4 (W.D. Tex. May 15, 2019). Even further, courts have found hostile work environments to be *insufficiently* severe in situations more offensive than Hernandez's. *See, e.g.*, *Haider-Rizvi v. Harris Cnty. Toll Rd. Auth.*, 243 F. Supp. 3d 811, 820–21 (S.D. Tex. 2017); *Jones v. Dall. Cnty.*, 47 F. Supp. 3d 469, 488 (N.D. Tex. 2014); *Waters v. Mills*, No. EP-13-CV-00241-FM, 2014 WL 11342500, at *5 (W.D. Tex. Dec. 17, 2014); *Hackney v. Tex. Dep't of Crim. Just.*, No. CIV.A.1:07CV113TH, 2009 WL 2391232, at *9–10 (E.D. Tex. Aug. 4, 2009). This "important factor" ultimately weighs against Hernandez. *EEOC v. Bobrich Enters.*,

---

recently held that an allegation of this kind does not demonstrate pervasive harassment. *West*, 960 F.3d at 742 ("[F]requently complaining about something does not mean it happened frequently. Without more, [a plaintiff] cannot show the harassment was pervasive."); *see Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1049–50 (5th Cir. 1996). Nevertheless, the Court views these allegations of pervasiveness in Hernandez's favor here since he is the non-movant. *Butts*, 877 F.3d at 582.

[7] This is not to minimize the alleged epithets directed toward Hernandez. But given the established standards the Court must apply, Hernandez does not offer enough to evince "an environment that a reasonable person would find" severe. *Harris*, 510 U.S. at 21.

11

No. 3:05-CV-1928-M, 2008 WL 11350053, at *3 (N.D. Tex. Jan. 8, 2008), *aff'd*, No. 08-10162, 2009 WL 577728 (5th Cir. Mar. 6, 2009).

Next, the evidence Hernandez offers as to the third factor is sparse. As Rush points out, Mr. Hernandez does not offer proof that any harassment was physically threatening or humiliating up until the altercation with Stallings (Dkt. #86 at pp. 23–24). The harassment may have been "boorish and offensive," but "mere utterance[s]" of "epithet[s] that engender offensive feelings" are not physically threatening or humiliating. *See Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999). Moreover, the single physical incident Hernandez ties to his discrimination claims cannot be viewed as racial in nature (Dkt. #86 at p. 24). The summary-judgment record demonstrates that the altercation between Hernandez and Stallings was a workplace scuffle having nothing to do with race. And given the lack of evidence that the workplace at the Denton facility might escalate to physical violence on account of a *racially* hostile environment, the Court is not entirely certain of the role this incident plays in Hernandez's claims. This factor weighs against Hernandez.

Further, Hernandez puts forth almost no evidence that the purported harassment unreasonably interfered with his work performance (Dkt. #86 at p. 23). Other than conclusory statements in his pleadings, practically the only reference Hernandez makes to impairment of job performance is a statement offered by his supervisor, Chance Neutze, who stated that the atmosphere in the break room at the Denton facility affected Neutze's "work" and "ability to do the work" (Dkt. #135, Exhibit G at p. 14:1–3). Even assuming that the environment in the break room related to Hernandez's ability to work, this evidence is insufficient to show interference with work performance for two key reasons. For one thing, the information Hernandez offers regarding the break room's atmosphere does not specifically relate to race. Hernandez takes Neutze's

statement out of context—Neutze's testimony shows that that break room impacted work performance in the sense that it was not an apt place for conducting official business, not that the environment in the break room involved instances of racial impropriety (*see* Dkt. #135, Exhibit G at pp. 14–16). And even if the Court assumed Neutze's statement sufficed to demonstrate the racial nature of the work environment, Hernandez has not shown how the harassment interfered with his work specifically, let alone how it *unreasonably* interfered with his job performance. *See West*, 960 F.3d at 741. This factor also weighs against Hernandez.

Given the totality of the circumstances, the relevant facts do not demonstrate that, as a matter of law, the harassment Hernandez alleges affected a term, condition, or privilege of his employment. The Court therefore sees no genuine issue of material fact and grants Defendant's motion for summary judgment as to Hernandez's claim for hostile work environment.

**III.    Retaliation**

Retaliation is an intentional act committed by an employer in response to an employee's complaint of workplace discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005). "The elements of a § 1981 retaliation claim are (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017) (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339, 340 n.8 (5th Cir. 2003)). If the only evidence alleged is circumstantial, a plaintiff must make a *prima facie* showing of retaliation for the claim to proceed. *See, e.g.*, *Willis v. Cleco Corp.*, 749 F.3d 314, 317–18 (5th Cir. 2014). Once shown, retaliation claims follow the familiar *McDonnell Douglas* burden-shifting framework. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020).

Even assuming Hernandez satisfies the first two elements of his retaliation claim, he fails to allege facts sufficient to demonstrate the necessary causal connection between the protected activities in which he engaged and Rush's allegedly adverse action. As the Supreme Court confirmed earlier this year, a plaintiff who brings a § 1981 claim must prove that race was a but-for cause of an alleged injury. *Comcast*, 140 S. Ct. at 1019. The *Comcast* opinion, however, did not address at which stage of the *McDonnell Douglas* framework the but-for causation standard applies. In the Title VII context, the Fifth Circuit allows plaintiffs to "satisfy the causal connection element" at the *prima facie* stage "by showing 'close timing between an employee's protected activity and an adverse action against him.'" *Feist v. La. Dep't. of Just., Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *McCoy*, 492 F.3d at 562). This "close-timing-is-enough" standard remained following the Supreme Court's holding in *Nassar*, which held that a plaintiff bringing a Title VII retaliation claim must prove that race was a but-for cause of an alleged injury. *Garcia v. Prof'l Contract Services, Inc.*, 938 F.3d 236, 242–43 (5th Cir. 2019); *see id.* at 242 ("[A] plaintiff, even post-*Nassar*, can show the prima facie case's required 'causal connection' by pointing to close enough timing between the protected activity and the adverse action."). Prior to *Comcast*, the close-timing-is-enough standard also applied to § 1981 retaliation claims. *See, e.g.*, *Onyeka v. CVS Caremark Corp.*, No. CIV.A. H-10-5102, 2012 WL 126101, at *5 (S.D. Tex. Jan. 17, 2012). Taking into account the Supreme Court's language in *Comcast* and the nearly identical analyses courts conduct under Title VII and § 1981, the Court finds no reason to view *Comcast* as overruling or altering the close-timing-is-enough standard for § 1981 retaliation claims. *Cf. Garcia*, 938 F.3d at 241–43. As such, the Court applies this standard to the first stage of the *McDonnell Douglas* framework in the § 1981 retaliation context. *See Hosey v. Perot Sys. Corp.*, No. 4:03-CV-141, 2005 WL 8160711, at *3 (E.D. Tex. Mar. 8, 2005), *report and*

14

*recommendation adopted in part, rejected in part*, No. 4:03-CV-141, 2005 WL 8160710 (E.D. Tex. May 27, 2005).

As previously stated, the plaintiff bears the initial burden under *McDonnell Douglas* to show a *prima facie* case for the § 1981 claim. Hernandez can meet his burden of causation by demonstrating close enough timing between reporting alleged harassment to Rush and his reassignment to a different work location. The first instance in which Hernandez purportedly engaged in an activity protected by § 1981 was on January 16, 2019—the morning of his altercation with Stallings—when he sent an email reporting race-based harassment.[8] When Hernandez was medically cleared to return to work and did so on April 11, 2019, he had been transferred out of the Schlumberger facility in Denton. Just under three months had elapsed between the protected activity and adverse employment action. The Fifth Circuit has found comparable lengths of time to satisfy the close-timing-is-enough standard. *See, e.g.*, *Garcia*, 938 F.3d at 243 (two-and-a-half months); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (four months). Therefore, Hernandez has met the *prima facie* burden for his retaliation claim.

Now the burden of production shifts to Rush to advance a legitimate, nondiscriminatory reason for Hernandez's transfer to a different facility. Rush offers a concrete explanation for the action—Hernandez was transferred by necessity. Following the altercation between Hernandez and Stallings, Schlumberger banned the two from the Denton facility (Dkt. #86 at pp. 13–14). As a result, Rush had no control over whether Hernandez returned to the Schlumberger facility in

---

[8] While Hernandez states that he reported harassment repeatedly throughout his tenure at the Denton facility, this instance is the earliest non-general allegation of Hernandez engaging in a § 1981 protected activity. In order to examine this issue in the light most favorable to the non-movant, the Court anchors its retaliation analysis to this allegation. *See Weems v. Dall. Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 735–36 (N.D. Tex. 2017).

Denton. Rush has therefore satisfied its burden to proffer a legitimate, nondiscriminatory reason for transferring Hernandez to a different facility.[9]

The burden of production now shifts back to Hernandez to show the reason offered for transferring him was pretext for discrimination. As is the case at the same stage for retaliation claims brought under Title VII, Hernandez must prove that "the adverse action would not have occurred '*but for*' [Rush]'s retaliatory motive." *See Feist*, 730 F.3d at 454 (emphasis added); *see also Comcast*, 140 S. Ct. at 1019 ("To prevail [on a § 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). To avoid summary judgment, Hernandez must show "'a conflict in substantial evidence' on the question of whether [Rush] would not have taken the action 'but for' the protected activity." *See Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)). "Evidence is 'substantial' if it is 'of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.'" *Long*, 88 F.3d at 308 (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)). And while pleading temporal proximity between the § 1981 protected activity and the alleged adverse employment action suffices to present a *prima facie* case for retaliation, such a showing is insufficient on its own to demonstrate that Rush's explanation for Hernandez's transfer was merely pretextual. *See Strong v. Univ. Healthcare Sys.*, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for

---

[9] This step of the *McDonnell Douglas* analysis does not involve a credibility assessment. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016). Even if Rush was "incorrect in its assessment of the facts it relie[d] on to justify" transferring Hernandez, Rush satisfies its burden of production at this stage as long as Rush had no "discriminatory animus against [Hernandez] in making its decision." *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

causation."). "[O]ther significant evidence of pretext" must be presented in combination with "suspicious timing" for Hernandez to survive summary judgment. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999).

Hernandez does not carry this burden. Directly responding to Rush's reason for reassigning him, Hernandez argues that the reason is "insufficient" because "Rush knew about the hostile work environment at Schlumberger's facility and did nothing to prevent Schlumberger participated [sic] in the hostile work environment" (Dkt. #109 at pp. 9–10). This response does not bring Hernandez any closer to demonstrating that his transfer would not have occurred but for reporting an alleged incident of racially based workplace harassment. Hernandez does not offer further evidence to aid his causation argument, and the Fifth Circuit almost always requires a greater level of support to demonstrate causation in similar circumstances. *See, e.g.*, *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561–64 (5th Cir. 2019). "Few legal principles are better established than the rule requiring a plaintiff to establish causation," *Comcast*, 140 S. Ct. at 1013, and Hernandez has not done so here. Accordingly, he has not created a genuine issue of material fact, and his retaliation claim is insufficient as a matter of law.

## CONCLUSION

It is therefore **ORDERED** that Rush's Motion for Summary Judgment (Dkt. #86) is **GRANTED** as to the retaliation and hostile work environment claims and **DENIED** as to the disparate-treatment claim. It is further **ORDERED** that the claims for hostile work environment and retaliation asserted against Rush are hereby **DISMISSED WITH PREJUDICE**.

SIGNED this 17th day of December, 2020.

*[signature: Amos Mazzant]*

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE