# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| RAYMOND HERNANDEZ and <br> VENITA BETH HERNANDEZ, <br><br> *Plaintiffs*, <br><br> v. <br><br> RUSH ENTERPRISES, INC., ET AL., <br><br> *Defendants*. | § <br> § <br> § Civil Action No. 4:19-cv-638 <br> § Judge Mazzant <br> § <br> § <br> § <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Holt Cat's Motion for Summary Judgment (Dkt. #93). Having considered the Motion and the relevant pleadings, the Court finds that it should be granted.

### BACKGROUND

This suit concerns allegations by Plaintiff Raymond Hernandez ("Mr. Hernandez") that he suffered racially based discrimination in the workplace. In 2015, Rush Enterprises, Inc. and Rush Truck Centers of Texas, LP ("Rush") hired Mr. Hernandez, a Hispanic male, as a Level 2 Mechanic. Mr. Hernandez initially worked at a facility owned and operated by Schlumberger Limited and Schlumberger Technology Company ("Schlumberger") in Denton. After working there for six months, Mr. Hernandez was transferred to a Rush facility in Irving, where he worked for four months. Mr. Hernandez was then transferred back to the Schlumberger facility in Denton, where he worked until Rush reassigned him to a different facility in early 2019. Employees of Rush, Schlumberger, and Holt Texas, Ltd. d/b/a Holt Cat ("Holt") were present at the Schlumberger worksite during Mr. Hernandez's tenure there. Roughly a year and a half into this stint at the Denton facility, Mr. Hernandez was promoted to the position of Lead Man.

Mr. Hernandez alleges that he consistently endured harassment from his co-workers based on his race, and he asserts that he reported such harassment to his supervisors. His allegations detail an unsuitable workplace climate, particularly unfavorable towards those of Hispanic descent. Things came to a head on January 16, 2019, when Mr. Hernandez entered the break room at the Denton facility and a physical altercation occurred between Mr. Hernandez and Holt employee Jeremy Stallings ("Stallings"). The incident culminated with Stallings shoving Mr. Hernandez to the ground, which caused Mr. Hernandez's hip to fracture. Mr. Hernandez subsequently went to the hospital and underwent hip replacement surgery. Following the January 16 altercation, Schlumberger banned Mr. Hernandez and Stallings from the Denton facility, and Rush reassigned Hernandez to a different worksite.

On September 3, 2019, Mr. Hernandez and Venita Beth Hernandez ("Mrs. Hernandez"), his wife, filed suit against Rush, Schlumberger, and Holt for violations of federal employment-discrimination law (Dkt. #1). On August 21, 2020, Holt filed its Motion for Summary Judgment (Dkt. #93), currently before the Court. On October 14, 2020, Plaintiffs filed their response (Dkt. #131). On October 30, 2020, Holt filed its reply (Dkt. #149). And on November 6, 2020, Plaintiffs filed their sur-reply (Dkt. #153).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Dispute over a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies

which facts are material. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). Trial courts "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020).

The party moving for summary judgment bears the initial burden of identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant satisfies this burden as to a claim or defense for which summary judgment is sought, evidence must be offered that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may discharge the burden by demonstrating the absence of evidence supporting the nonmovant's case. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried this initial burden, the nonmovant "must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden—reciting "barebones, conclusory, or otherwise-unsupported assertions" is simply insufficient. *Hassen v. Ruston Louisiana Hosp. Co., L.L.C.*, 932 F.3d 353, 355–56 (5th Cir. 2019); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994). And courts are not required "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Rather, to have a request for summary judgment dismissed, a nonmovant must show with "'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). Courts must "'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

## ANALYSIS

Plaintiffs allege two general sets of claims: those based on federal employment-discrimination law and those based on state tort law. The Court addresses each set of claims in turn.

### I. Federal Employment-Discrimination Law

Mr. Hernandez alleges that Holt committed racial discrimination against him and, as a result, now seeks to recover under 42 U.S.C. § 1981. Tracing its origins to the Civil Rights Act of 1866, § 1981 provides that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Making and enforcing contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). While similar to "the many statutes

4

that combat racial discrimination," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006), § 1981 differs from other antidiscrimination laws in key ways.[1] Relevant here, § 1981 shields those discriminated against by state *or* private actors—but only as to discrimination concerning "race or alienage." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986).

To succeed on a § 1981 claim, intentional discrimination must be demonstrated. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). "Intentional discrimination can be established through either direct or circumstantial evidence." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("[O]nly the burden of production ever shifts to the defendant, never the burden of persuasion."). Section 1981 provides several theories of liability under which plaintiffs may recover. Mr. Hernandez asserts three here: disparate treatment, hostile work environment, and retaliation.[2] The Court turns first to the claim for hostile work environment and then addresses the disparate-treatment and retaliation claims together.

### a. Hostile Work Environment

Section 1981 precludes employers from requiring employees "to work in a discriminatorily hostile or abusive environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also*

---

[1] Even so, courts look to Title VII and 42 U.S.C. § 1983 claims to guide § 1981 analysis. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) ("The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983.").
[2] Retaliation claims are cognizable under § 1981. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354–55 (2013) (finding that "42 U.S.C. § 1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it" (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008))).

*EEOC v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc) ("The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination." (internal quotation marks omitted) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (Thomas, J., dissenting))). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quoting *Harris*, 510 U.S. at 21). To prevail on a § 1981 claim for hostile work environment, Mr. Hernandez must demonstrate that (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in that protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) Holt knew or should have known about the harassment and failed to take prompt remedial action. *See West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020). "For conduct to be considered sufficiently severe or pervasive, it 'must be both objectively and subjectively offensive.'" *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617–18 (5th Cir. 2020) (quoting *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007)); *see Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989) ("[C]ourt[s] should review the pattern and frequency of the harassment and determine whether a reasonable person would feel that the environment was hostile throughout the period that formed the basis of the plaintiff's claim."). Ultimately, "a plaintiff's hostile environment claim 'is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant.'"[3] *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850

---

[3] In addition to race-based hostile work environment claims, the Court also looks to hostile work environment claims based on sex for analytical guidance. *See Faragher*, 524 U.S. at 787 n.1 ("Although racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, . . . there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment."); *see Halstead*, 916 F.3d at 417.

F.3d 731, 737 (5th Cir. 2017) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)).

Because the "term, condition, or privilege" element is dispositive here, the Court does not analyze the other aspects of the hostile work environment claim and focuses on the "term, condition, or privilege" element.[4]

To determine if a workplace environment is hostile or abusive, "courts closely consider the 'frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001) (quoting *Harris*, 510 U.S. at 21); *see Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007) ("[C]ourt[s] must look to the totality of the circumstances . . . ."). "[N]o single factor is determinative," though, *West*, 960 F.3d at 742, and "[w]orkplace conduct is not measured in isolation," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Moreover, "hostile work environment jurisprudence is not designed to 'prohibit all verbal or physical harassment in the workplace.'" *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 443 (5th Cir. 2011) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 77 (1998)). "Merely offensive conduct is not actionable." *Collier v. Dall. Cnty. Hosp. Dist.*, No. 3:17-CV-3362-D, 2019 WL 2394225, at *12 (N.D. Tex. June 6, 2019), *aff'd*, 805 F. App'x 306 (5th Cir. 2020); *see Lopez v. Target Corp.*, 676 F.3d 1230, 1235 (11th Cir. 2012) (explaining that "§ 1981 is not a general civility code"). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a

---

[4] In particular, though, the Court is not entirely persuaded that Mr. Hernandez has satisfied his burden to prove that the harassment he endured was based on his membership in a protected class. The harassment asserted appears to be predominantly race-neutral with instances of racial elements cropping up occasionally (*see, e.g.*, Dkt. #135, Exhibit B at p. 32:6–20). The Court assumes without deciding that Mr. Hernandez satisfies this element because the hostile work environment claim is more readily disposed of as a matter of law on the "term, condition, or privilege" element.

7

reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

While no one factor is dispositive, *West*, 960 F.3d at 742, and the harassment need only be severe *or* pervasive, *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005), the absence of summary-judgment evidence supporting the "term, condition, or privilege" element of Mr. Hernandez's claim for hostile work environment proves fatal. In examining the four factors relevant to the inquiry into this element, the Court finds only one factor to favor Mr. Hernandez—pervasiveness.[5] Otherwise, the record at summary judgment is practically devoid of evidence to support the other three factors.

Mr. Hernandez consistently claims that the racially based harassment was severe (Dkt. #16 at pp. 5, 12–13; Dkt. #131 at p. 4; Dkt. #135, Exhibit AA at p. 2). This is only half of the equation—he may "subjectively perceive the harassment as sufficiently severe or pervasive." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris*, 510 U.S. at 17). Yet in light of Fifth Circuit precedent, Mr. Hernandez has not demonstrated his perception to be "objectively reasonable."[6] *Id.* The harassment described in cases in which hostile work environments have been identified is simply in a different league of severity than those alleged by

---

[5] Much of the evidence demonstrating the pervasiveness of the alleged harassment comes from declarations by Mr. Hernandez and others generally stating as much and providing little concrete detail other than it being "daily" (*see, e.g.*, Dkt. #135, Exhibit B at p. 30:2–11). Mr. Hernandez also states that he regularly reported the harassment to his supervisors during his tenure at the Denton facility (*see, e.g.*, Dkt. #135, Exhibit AA at p. 4). But the Fifth Circuit recently held that an allegation of this kind does not demonstrate pervasive harassment. *West*, 960 F.3d at 742 ("[F]requently complaining about something does not mean it happened frequently. Without more, [a plaintiff] cannot show the harassment was pervasive."); *see Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1049–50 (5th Cir. 1996). Nevertheless, the Court views these allegations of pervasiveness in Mr. Hernandez's favor here since he is the non-movant. *Butts*, 877 F.3d at 582.

[6] This is not to minimize the alleged epithets directed toward Mr. Hernandez. But given the established standards the Court must apply, Mr. Hernandez does not offer enough to evince "an environment that a reasonable person would find" severe. *Harris*, 510 U.S. at 21.

Mr. Hernandez. *See, e.g.*, *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Hale v. Tex. Dep't of Crim. Just.*, No. 7:18-CV-097-M-BQ, 2019 WL 7500593, at *6 (N.D. Tex. Dec. 3, 2019), *report and recommendation adopted*, No. 7:18-CV-097-M, 2020 WL 95653 (N.D. Tex. Jan. 8, 2020); *Pfau v. Mnuchin*, No. 1:18-CV-422-RP, 2019 WL 2124673, at *4 (W.D. Tex. May 15, 2019). Even further, courts have found hostile work environments to be *insufficiently* severe in situations more offensive than Mr. Hernandez's. *See, e.g.*, *Haider-Rizvi v. Harris Cnty. Toll Rd. Auth.*, 243 F. Supp. 3d 811, 820–21 (S.D. Tex. 2017); *Jones v. Dall. Cnty.*, 47 F. Supp. 3d 469, 488 (N.D. Tex. 2014); *Waters v. Mills*, No. EP-13-CV-00241-FM, 2014 WL 11342500, at *5 (W.D. Tex. Dec. 17, 2014); *Hackney v. Tex. Dep't of Crim. Just.*, No. CIV.A.1:07CV113TH, 2009 WL 2391232, at *9–10 (E.D. Tex. Aug. 4, 2009). This "important factor" ultimately weighs against Mr. Hernandez. *EEOC v. Bobrich Enters.*, No. 3:05-CV-1928-M, 2008 WL 11350053, at *3 (N.D. Tex. Jan. 8, 2008), *aff'd*, No. 08-10162, 2009 WL 577728 (5th Cir. Mar. 6, 2009).

Next, the evidence Mr. Hernandez offers as to the third factor is sparse. As Holt points out, Mr. Hernandez does not offer proof that any harassment was physically threatening or humiliating up until the altercation with Stallings (Dkt. #93 at p. 21). The harassment may have been "boorish and offensive," but "mere utterance[s]" of "epithet[s] that engender offensive feelings" are not physically threatening or humiliating. *See Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999). Moreover, the single physical incident Mr. Hernandez ties to his discrimination claims cannot be viewed as racial in nature (Dkt. #93 at p. 21). The summary-judgment record demonstrates that the altercation between Mr. Hernandez and Stallings was a workplace scuffle having nothing to do with race. And given the lack of evidence that the workplace at the Denton facility might escalate to physical violence on account

of a *racially* hostile environment, the Court is not entirely certain of the role this incident plays in Mr. Hernandez's claims. This factor weighs against Mr. Hernandez.

Further, Mr. Hernandez puts forth almost no evidence that the purported harassment unreasonably interfered with his work performance (Dkt. #93 at p. 22). Other than conclusory statements in his pleadings,[7] practically the only reference Mr. Hernandez makes as to impairment of job performance is a statement offered by his supervisor at Rush, Chance Neutze, who stated that the atmosphere in the break room at the Denton facility affected Neutze's "work" and "ability to do the work" (Dkt. #135, Exhibit G at p. 14:1–3). Even assuming that the environment in the break room at Schlumberger's facility in Denton related to Mr. Hernandez's ability to work, this evidence is insufficient to show interference with work performance for two key reasons. For one thing, the information Mr. Hernandez offers regarding the break room's atmosphere does not specifically relate to race. Mr. Hernandez takes Neutze's statement out of context—Neutze's testimony shows that that break room impacted work performance in the sense that it was not an apt place for conducting official business, not that the environment in the break room involved instances of racial impropriety (*see* Dkt. #135, Exhibit G at pp. 14–16). And even if the Court assumed Neutze's statement sufficed to demonstrate the racial nature of the work environment, Mr. Hernandez has not shown how the harassment interfered with his work specifically, let alone how it *unreasonably* interfered with his job performance. *See West*, 960 F.3d at 741. This factor also weighs against Mr. Hernandez.

Given the totality of the circumstances, the relevant facts do not demonstrate that, as a matter of law, the harassment Mr. Hernandez alleges affected a term, condition, or privilege of his

---

[7] Holt takes issue with the "self-serving" nature of Mr. Hernandez's summary-judgment evidence (Dkt. #149 at p. 19). But the issue with much of this evidence, rather, is its conclusory nature. *Salazar v. Lubbock Cnty. Hosp. Dist.*, No. 20-10322, 2020 WL 7138646, at *4–5 (5th Cir. Dec. 7, 2020) (Ho, J., concurring).

employment. The Court therefore sees no genuine issue of material fact and grants Holt's motion for summary judgment as to Mr. Hernandez's claim for hostile work environment.

### b. Disparate Treatment and Retaliation Based on Race[8]

Under the disparate-treatment and retaliation theories of § 1981, a plaintiff bears the initial burden to produce a *prima facie* case for these claims. *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (disparate treatment); *Willis v. Cleco Corp.*, 749 F.3d 314, 317–18 (5th Cir. 2014) (retaliation). A similar element these claims share is the requirement of an adverse employment action taken against the plaintiff. *See Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) ("[A] plaintiff [alleging disparate treatment under § 1981] must prove that he or she was subject to an 'adverse employment action' . . . ."); *Halstead*, 916 F.3d at 419 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67) (explaining that a plaintiff alleging retaliation under § 1981 must be "subject[ed] to an employment decision that was 'materially adverse'"). Even under the "less stringent standard" in retaliation claims as pertains to adverse employment actions, *Halstead*, 916 F.3d at 419, Mr. Hernandez has not made out a *prima facie* case of an adverse action by Holt.

To satisfy this element, Mr. Hernandez must point to a materially adverse employment decision, which is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67. The only adverse action Mr. Hernandez appears to allege Holt took against him "includes hostile work environment and his injuries" (Dkt. #131 at p. 9). But as detailed above, Mr. Hernandez cannot establish a claim for hostile work environment against Holt as a matter of law. Without the

---

[8] The parties discuss Holt's liability as to Mr. Hernandez's employment status in their pleadings (Dkt. #93 at pp. 16–18; Dkt. #131 at pp. 7–10; Dkt. #149 at pp. 7–9; Dkt. #153 at pp. 1–3). Because the Motion is resolvable on other grounds, the Court does not address this issue.

11

presence of a hostile work environment under § 1981, Mr. Hernandez's pleadings lack an adverse action Holt allegedly took against him. The absence of an adverse action precludes Mr. Hernandez from succeeding on his § 1981 claims for disparate treatment and retaliation as a matter of law, and the Court accordingly grants Holt's motion for summary judgment as to Mr. Hernandez's disparate-treatment and retaliation claims.

## II.     State-Law Tort Claims

Plaintiffs also allege several tort claims against Holt. The Court has jurisdiction over these claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court exercises its supplemental jurisdiction and addresses these claims in turn.[9]

### a.     Negligence, Negligent Supervision, and Negligent Training

"Under Texas law, 'to sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach.'"[10]  *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 292 (5th Cir. 2016) (brackets omitted) (quoting *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001)). "Whether a legal duty exists is a threshold question of law . . . ." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 541 (5th Cir. 2005) (citing *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999)). Liability cannot exist in the absence of duty. "[W]hether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question." *Ford v. Cimarron*

---

[9] It is undisputed that Texas law applies. *See Crow v. Am. Messaging Serv., L.L.C.*, No. 4:19-CV-600-SDJ, 2020 WL 5554558, at *1–2 (E.D. Tex. Sept. 17, 2020).

[10] Because "Texas courts . . . apply the familiar elements of simple negligence, duty, breach, causation, and damages" in recognizing claims for negligent supervision and negligent training, the Court analyzes these claims together. *See Padilla v. Wal-Mart Stores Tex., LLC*, No. EP-19-CV-4-KC, 2020 WL 1902535, at *9 (W.D. Tex. Jan. 31, 2020).

*Ins. Co., Inc.*, 230 F.3d 828, 830 (5th Cir. 2000) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

"As a general matter, . . . there is no duty to control the conduct of third persons." *Morgan v. Delk*, No. 5:19CV86-RWS-CMC, 2020 WL 1899619, at *7 (E.D. Tex. Jan. 27, 2020) (quoting *Phillips*, 801 S.W.2d at 525), *report and recommendation adopted*, No. 5:19-CV-86-RWS-CMC, 2020 WL 880847 (E.D. Tex. Feb. 24, 2020). "Texas courts have recognized exceptionally limited instances where an employer has a duty to control its employee and is directly liable when it fails to do so." *Washington v. Tyson Foods, Inc.*, No. 9:17-CV-126, 2018 WL 3603092, at *2 (E.D. Tex. June 27, 2018) (quoting *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017)). To determine whether a duty exists, Texas courts consider "social, economic, and political questions and their application to the facts at hand." *Praesel v. Johnson*, 967 S.W.2d 391, 397 (Tex. 1998) (quoting *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993)). These courts weigh "the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* (citing *Graff*, 858 S.W.2d at 920). Texas courts also consider "whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm." *Id.* at 397–98 (citing *Graff*, 858 S.W.2d at 920).

Mr. Hernandez urges the Court to find that Holt was duty-bound to prevent the injury he suffered as a result of his altercation with Stallings (Dkt. #131 at pp. 9–10). But the Court cannot do so. The relevant factors simply do not weigh in favor of recognizing such a duty.

The Texas Supreme Court's decision in *Pagayon* is instructive. In that case, the Texas Supreme Court held that an employer "owe[d] no duty to supervise its employees" "in a situation like the one presented." *Pagayon*, 536 S.W.3d at 508. After continued verbal hostility over time

13

between two employees boiled over, one of the employees and the father of the other employee engaged in a physical altercation lasting only "a few seconds," which ultimately led to the father's death. *Id.* at 500–02. After examining the relevant factors in light of the facts, Chief Justice Hecht, writing for a unanimous court, ultimately found that "[w]hatever duty an employer may have to control its employees, the factors that must shape it cannot extend it to the situation here." *Id.* at 507.

The *Pagayon* court's examination of these factors demonstrates why the Court cannot find the duty Mr. Hernandez alleges to exist here:

- Even though Mr. Hernandez disagrees, the risk that physical violence of the sort leading to his injury would occur at the Denton facility was small. This was not "a situation in which repeated, serious threats or actions could well pose a threat to" other employees. *Id.*
- "While it may have been foreseeable" that the teasing between Mr. Hernandez and Stallings "would linger or even fester, nothing suggests that [it was] likely to lead to serious injury." *Id.* As the Texas Supreme Court phrased it, "Any duty an employer has to control its employers should not make it an absolute insurer of their safety." *Id.*
- A question as to the degree of supervision Holt provides over its employees is undoubtedly raised by the instant litigation. "But to discharge a duty to prevent an occurrence such as this, an employer would be required to investigate almost every employee complaint and monitor every situation." *Id.* at 507–08.
- Recognizing such a duty here would have dire ramifications on the level of liability employers like Holt must shoulder as to their employees. Extending liability in a situation like the one on which Mr. Hernandez bases

14

> his claim "would render the employer liable for the most extreme consequences of simple employee friction." *Id.* at 508.

- Even if Holt could have prevented the altercation between Mr. Hernandez and Stallings, the public was never subjected to risk or danger as a result of the altercation. "Any social utility to requiring an employer to be as vigilant as [Holt] would have to have been to prevent a fistfight involving employees is minimal." *Id.*

Looking at the factors in their totality, the Court is unable to recognize the duty Mr. Hernandez alleges to exist here. Therefore, the Court grants Holt's motion for summary judgment as to Mr. Hernandez's claims for negligence, negligent supervision, and negligent training.

### b. Remaining Claims

The two claims left standing are gross negligence and loss of consortium. Both claims are unavailable as a matter of law.

Gross negligence and ordinary negligence are differentiated only by "the defendant's state of mind"—Mr. Hernandez must show that Holt "knew about the peril, but [its] acts or omissions demonstrate that [it] did not care." *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 247 (Tex. 1999). Just like ordinary negligence, the existence of a duty is required to succeed on a gross negligence claim. *AEP Tex. Cent. Co. v. Arredondo*, No. 19-0045, 2020 WL 6811465, at *7 (Tex. Nov. 20, 2020). As established above, Holt did not owe Mr. Hernandez a duty related to the injury he suffered as a result of his altercation with Stallings. Therefore, he cannot establish a claim for gross negligence as a matter of law, and the Court grants Holt's motion for summary judgment as to this claim.

Finally, Mrs. Hernandez alleges loss of consortium as a result of the injury her husband suffered. Loss of consortium is the tort remedy "for the negligent or intentional impairment" of the marital relationship. *Whittlesey v. Miller*, 572 S.W.2d 665, 666 (Tex. 1978). Even though

15

"loss of consortium is a separate and independent cause of action, that action is a derivative claim that arises only as a consequence of injuries to one's spouse." *McGovern v. Williams*, 741 S.W.2d 373, 374 (Tex. 1987). To recover on this claim, Mrs. Hernandez must prove that Mr. Hernandez "suffered [a] serious, permanent, and disabling injur[y]" and "link the existence of th[at] injur[y] to the diminished or missing affection, solace, companionship, society, assistance, and sexual relations contemplated within the theory of consortium." *Dunn v. Bank-Tec S.*, 134 S.W.3d 315, 325 (Tex. App.—Amarillo 2003, no pet.).

The issue ultimately fatal to the loss-of-consortium claim is that no fault has been established showing Holt caused Mr. Hernandez's injury. To recover damages for loss of consortium, causation must be shown between the injury incurred by the plaintiff's spouse and the actions of the defendant. *See Haygood v. De Escabedo*, 356 S.W.3d 390, 394 (Tex. 2011). Plaintiffs cannot satisfy this causation requirement. As such, this claim cannot be made as a matter of law, and the Court grants Holt's motion for summary judgment as to Mrs. Hernandez's loss-of-consortium claim.

## CONCLUSION

It is therefore **ORDERED** that Holt's Motion for Summary Judgment (Dkt. #93) is **GRANTED**. It is further **ORDERED** that all claims against Holt are hereby **DISMISSED WITH PREJUDICE**.

**SIGNED this 17th day of December, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE