# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RAYMOND HERNANDEZ and VENITA BETH HERNANDEZ, | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO.  4:19-CV-00638 |
| v. | § § | Judge Mazzant |
| RUSH ENTERPRISES, INC., et al., | § § | |
| *Defendants*. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants Rush Enterprises, Inc. and Rush Truck Centers of Texas, LP's Motion to Strike Plaintiffs' Expert Witness Designations of Coneisha L. Sherrod and Cumulative Experts Designated to Testify on the Issue of Attorney's Fees (Dkt. #54).  Having considered the motion and the relevant pleadings, the Court finds that Defendants' motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This suit concerns allegations by Plaintiff Raymond Hernandez ("Hernandez") that he suffered racially based discrimination in the workplace.  In 2015, Rush Enterprises, Inc. and Rush Truck Centers of Texas, LP ("Rush") hired Hernandez, a Hispanic male, as a Level 2 Mechanic. Hernandez initially worked at a facility owned and operated by Schlumberger Limited and Schlumberger Technology Company ("Schlumberger") in Denton.  After working there for six months, Hernandez was transferred to a Rush facility in Irving, where he worked for four months. Hernandez was then transferred back to the Schlumberger facility in Denton, where he worked until Rush reassigned him to a different facility in early 2019.  Employees of Rush, Schlumberger,

and Holt Texas, Ltd. d/b/a Holt Cat ("Holt") were present at the Schlumberger worksite during Hernandez's tenure there.   Roughly a year and a half into this stint at the Denton facility, Hernandez was promoted to the position of Lead Man.

Hernandez alleges that he consistently endured harassment from his co-workers based on his race, and he asserts that he reported such harassment to his supervisors.  His allegations detail an unsuitable workplace climate, particularly unfavorable towards those of Hispanic descent. Things came to a head on January 16, 2019, when Hernandez entered the break room at the Denton facility and a physical altercation occurred between Hernandez and Holt employee Jeremy Stallings ("Stallings").  The incident culminated with Stallings shoving Hernandez to the ground, which caused Hernandez's hip to fracture.  Hernandez subsequently went to the hospital and underwent hip replacement surgery.

Following the January 16 altercation, Schlumberger banned Hernandez and Stallings from the Denton facility, and Rush assigned Hernandez to a different location.  At the new location, Hernandez's title reverted to Level 2 Mechanic.

On March 6, 2020, Defendants filed the present motion (Dkt. #54).  On April 3, 2020, Plaintiffs filed a response (Dkt. #66).  On April 13, 2020, Defendants filed a reply (Dkt. #70).  On April 20, 2020, Plaintiffs filed a sur-reply (Dkt. #72).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594.  In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Id.* at 593–94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test."  *Id.* at 593.  As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue.

*Kuhmo*, 526 U.S. at 152.  Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court.  *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendants' motion is two-fold: (1) Defendants ask the Court to strike Coneisha Sherrod's ("Sherrod") expert report, and (2) Defendants ask the Court strike the reports and contemplated testimony of four lawyers because "their reports and opinions are improperly repetitive and cumulative" (Dkt. #54 at p. 6).

Plaintiffs respond that no report should be stricken.  Regarding Sherrod, Plaintiffs contend that Defendants' motion "substantively challenge[s] only the application of standards to the facts, a matter going to the weight of the testimony" (Dkt. #66 at p. 9).  Regarding the attorneys' reports and contemplated testimony, Plaintiffs assert that "although multiple experts are appropriate, the matter is not ripe for decision until after a trial" (Dkt. #66 at p. 9).

The Court will address each of Defendants' arguments in turn.

### I.   Sherrod

Plaintiffs have proffered Sherrod as an expert in human resources.  Plaintiffs also claim the testimony is Sherrod is necessary to adequately prove their case.

Defendants argue that Sherrod's report is deficient and should be stricken.  Defendants contend that Sherrod's report contains nothing "demonstrat[ing] that she possesses scientific, technical, or other specialized knowledge that will assist the trier of fact at the trial of this case" (Dkt. #54 at p. 4).  Further, Defendants state that Sherrod's report "is improperly conclusory" (Dkt. #54 at p. 4).  Defendants claim that "Sherrod has not properly stated any opinions that could (or should) be presented to the trier of fact" (Dkt. #54 at p. 4).  Defendant contests the validity of

4

Sherrod's report under *Daubert*, Rule 403, and the well-settled principle that experts may not offer opinions amounting to legal conclusions. Further, Defendant asserts that Sherrod has impermissibly neglected to include her testimonial history in her report.

As a threshold matter, the Court acknowledges that Plaintiffs filed a second report from Sherrod as an exhibit to their response (Dkt. #66, Exhibit 4). Defendants first argue that "[i]mplicitly acknowledging that her first report did ***not*** meet *Daubert*'s requirements, Sherrod simply amended her report in the fact of Defendants' motions to strike, even though the deadline for submitting her report has come and gone" (Dkt. #70 at p. 2). Defendants claim "[t]hat creates an unfair moving target for Defendants for Sherrod's testimony" (Dkt. #70 at p. 2). Thus, Defendants ask the Court to strike the amendment. Defendants next argue that "[e]ven assuming Plaintiffs had leave to amend, however, Sherrod's revised report still fails the *Daubert* standards for both reliability and relevance" (Dkt. #70 at p. 2).

The Court's Scheduling Order controls the deadlines for expert-witness disclosures. *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-cv-2255-L, 2019 WL 1436659, at *21 (N.D. Tex. Mar. 31, 2019) (citing FED. R. CIV. P. 26(a)(2)(D)). However, the Scheduling Order is not always exhaustive. Under Rule 26(e), a party must disclose supplemental expert reports by the time pretrial disclosures are due, which is generally at least 30 days before trial. *See* FED. R. CIV. P. 26(e)(2); FED. R. CIV. P. 26(a)(3)(B). This "30-day limit [for supplemental disclosures] is a default subject to amendment by court order." *Kumar v. Frisco Indep. Sch. Dist.*, No. 4:19-cv-00284, 2020 WL 4464502, at *14 (E.D. Tex. Aug. 4, 2020).

Regardless of the character of a report, an untimely disclosure may be excluded "unless the failure was substantially justified or is harmless." *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-cv-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing FED. R. CIV. P.

5

37(c)(1)).  If the disclosure is untimely, the Court maintains broad discretion to exclude the expert

report as a means of enforcing a pretrial order.  *Hodges v. United States*, 597 F.2d 1014, 1018 (5th

Cir. 1979); *see* FED. R. CIV. P. 37(b)(2).

Further, the Court may grant leave to disclose a supplemental expert report after the

deadline in the Scheduling Order has expired for good cause.  *Geiserman v. MacDonald*, 893 F.2d

787, 791 (5th Cir. 1990).  To determine whether good cause exists, the Court considers: (1) the

explanation for the failure to [submit a complete report on time]; (2) the importance of the

testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a

continuance to cure such prejudice.  *Russell v. Wal-Mart Stores*, No. 1:06-cv-408, 2007 WL

9725186, at *2 (E.D. Tex. June 7, 2007) (citing *Geiserman*, 893 F.2d at 791).

### a.  Amended or Supplemental Report

The Court must first address whether Sherrod's report qualifies as an amended report or a

supplemental report.  Because the Court finds that the report is supplemental, the Court need not

address the consequences of an amended report.

The "Federal Rules of Civil Procedure do not define what constitutes a supplemental expert

report."  *Charter Sch. Sol. v. GuideOne Mut. Ins. Co.*, No. EP-18-cv-61-KC, 2019 WL 5258055,

at *2 (W.D. Tex. June 28, 2019).  Consequently, what constitutes a supplemental expert report is

not a clear-cut issue, and "the distinction likely depend[s] on the facts of the case."  *Charles v.

Sanchez*, No. EP-13-cv-00193-DCG, 2015 WL 808417, at *8 (W.D. Tex. Feb. 24, 2015) (citing

*Gilbane Bldg. Co. v. Downers Grover Comm. High Sch. Dist.*, No. 01-C-2260, 2005 WL 838679,

at *8 (N.D. Ill. Apr. 11, 2005)).

Although not expressly defined by the Federal Rules, courts have found a supplemental

report "necessarily contains information . . . not expressed in the original report, or there would be

no need to supplement." *Charter Sch. Sol.*, 2019 WL 5258055, at *2.  Other courts have distinguished a supplemental report by its purpose.  *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) ("The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement").  By definition, "supplemental" is "[t]hat which is added to a thing or act to complete it."  *Supplemental*, BLACK'S LAW DICTIONARY (6th ed. 1990).  For example, a supplemental report "adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the [supplemental report's deadline]."  *CEATS*, 2018 WL 453732 at *3.  It is a "revised expert report that is consistent with the core opinions expressed in the original expert report."  *Gilbane*, 2005 WL 838679, at *8.

After comparing the original report and second report produced by Sherrod, the Court is persuaded that the minor additions to the report are mere supplementations.  *See Sierra Club*, 73 F.3d at 571.  Sherrod does not offer additional opinions, nor does she change the opinions already offered.  Sherrod does not even alter the scope of any opinion.  Rather, Sherrod expanded upon the evidence she relied upon when reaching her conclusions.  Further, Sherrod incorporates more facts regarding Defendant's specific practices, and she outlines a more detailed introduction to the sources she utilized. Finally, she added a section in which she noted that she has not testified in any court proceedings. The new information Sherrod gives does not alter any original opinion offered, and thus the new report merely "adds to a previously-served report without going beyond the opinions expressed in the report."  *CEATS*, 2018 WL 453732, at *3.  The Court therefore finds the report is supplemental and does not supplant Sherrod's prior report.

### i. Timeliness of Supplemental Report

Next, the Court addresses whether the supplemental report was timely.  The Court's Scheduling Order governs the deadlines for expert disclosures.  FED. R. CIV. P. 26(a)(2)(C); *see Russell*, 2007 WL 9725186, at *2 (expert disclosures must "be made at the times and in the sequence directed by the court").  When the Scheduling Order is silent, supplemental reports are generally due 30 days before trial.  *See* FED. R. CIV. P. 26(e)(2); FED. R. CIV. P. 26(a)(3)(B); *Kumar*, 2020 WL 4464502, at *14.

Here, the Court's Scheduling Order does not expressly mandate a deadline for supplements (*see* Dkt. #34).  However, the Court does have a specified date by which expert disclosures must be made by Plaintiffs—February 3, 2020.  As this Court has previously held, this date implicitly includes the date by which supplemental disclosures must be made.  *See Kumar*, 2020 WL 4464502, at *14.  Because the Scheduling Order controls, the 30-day pretrial deadline is not the operative deadline for the supplemental report.  Thus, Sherrod's second report is untimely.  The untimely report may nonetheless be admissible, however, if the Court finds good cause to grant leave to supplement.

The Court finds good cause to grant Plaintiffs leave to supplement their untimely expert report.  Courts may grant a party leave to supplement its expert report after the deadline so long as the court finds "good cause."  FED. R. CIV. P. 16(b)(4).  The Court considers four factors in evaluating good cause: (1) the explanation for the failure to timely disclose; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.  *Newberry v. Discount Waste, Inc.*, No. 4:19-cv-00147, 2020 WL 363775, at *2 (E.D. Tex. Jan. 22, 2020) (quoting *Geiserman*, 893 F.2d at 791 (5th Cir. 1990)).

### 1.   Explanation for the Failure to Timely Disclose

Plaintiffs supplemented Sherrod's report in response to Defendants' timely-filed motion to strike.  Plaintiffs filed Sherrod's supplemental report on April 3, 2020, despite the Scheduling Order's disclosure deadline on February 3, 2020.  Plaintiffs do not offer an explanation as to why they failed to timely disclose Sherrod's supplemental report.  In fact, Plaintiffs dispute that the supplemental report is even necessary.  Rather, Plaintiffs argue that the first, timely report is sufficient.  Plaintiffs only determined that Sherrod's report arguably had deficiencies after Defendants filed their motion to strike.

Plaintiff's lack of explanation and subsequent supplementation post-Defendants' filing of a timely motion to strike weighs this factor against finding good cause exists to grant Plaintiffs leave.

### 2.   Importance of the Evidence

Plaintiffs spend considerable time detailing the importance of Sherrod's testimony. Plaintiffs claim that they "need an HR expert to combat the impression that assessment of the facts by Defendants and their professionals are superior to [Plaintiffs] and therefore, Defendants prevail simply on their stated credentials" (Dkt. #66 at p. 13).  Specifically, Plaintiffs contend that "[a]n HR expert is needed to correctly explain the employment practices, policies and procedures, and rules of conduct accepted in the industry and as proper human resource practices, contrary to Defendants' designated experts" (Dkt. #66 at pp. 13–14).  Plaintiffs argue "[t]he jury will be aided by the explanation of a human resource professional that is not retained or employed by Defendants" (Dkt. #66 at p. 14).

Defendants state that Plaintiffs' argument is a "red herring" because "that Plaintiffs' might *need* an expert to prove their case does not mean that the Court should ignore or relax the *Daubert*

standards" (Dkt. #70 at pp. 2–3).  While the statement is accurate, and the Court cannot and will not relax the *Daubert* standards, the "need" argument is not a red herring under this particular factor.  Defendants do not appear to contest that Plaintiffs in fact need Sherrod's testimony.

Sherrod's report contains information that presumably contradicts the opinions of Defendants' experts.  The supplemental report contains additional facts that support Sherrod's opinions.  Further, the supplemental report includes an important link between Sherrod's abstract opinions and the facts of the present case.  Sherrod supplements the evidence she considered, also strengthening the relationship between her research and the facts of Plaintiffs' case.  Thus, the Court finds that the importance of Sherrod's supplemental report weighs in favor of permitting the untimely filing.

### 3.  Potential Prejudice

The Court is not persuaded that allowing the supplemental report would prejudice Defendants.  Even though Plaintiffs did not disclose the supplement until April 3, 2020, "this is not a case of one party ambushing the other with undisclosed expert opinions at trial."  *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 374 (5th Cir. 2016).  The initial report contained the same opinions as the supplemental report.  The supplemental report, though filed as an attachment to Plaintiffs' response to Defendants' motion to strike, was disclosed, at the latest, on April 3, 2020 (Dkt. #66, Exhibit 4).  The Court is aware that Defendants read the report prior to April 13, 2020 because they argued its deficiencies in their reply (Dkt. #70).

The pretrial conference in this case was initially set for December 3, 2020 (Dkt. #35).  However, the Court rescheduled the conference to April 2, 2021 and reset the trial for April 19, 2021 (Dkt. #191).  Further, discovery did not close in the case until September 25, 2020—approximately five months after the supplemental report was disclosed.  The progression of the

case up to the time of disclosure, and the many months following until discovery closed, persuade the Court that no prejudice would result to Defendants if Plaintiffs were granted leave to supplement.  Thus, this factor weighs in favor of granting leave.

### 4.  Possibility of a Continuance to Cure Such Prejudice

The Court found no prejudice would result to Defendants.  However, even assuming prejudice was a consideration, Defendants have time before the April 19, 2021 trial[1] to explore weaknesses in Sherrod's testimony—assuming such has not already occurred.  This factor therefore also weighs in favor of granting leave to Defendants.

The Court finds that Defendants demonstrated good cause to supplement Sherrod's initial report.  Consequently, the Court will analyze the propriety of Sherrod's supplemental report.

### b.  Admissibility of the Supplemental Report

Defendants contest the admissibility of Sherrod's initial, and subsequently supplemental, report because it "fails the *Daubert* standards for both reliability and relevance" (Dkt. #70 at p. 2).  Specifically, Defendants allege that: Sherrod's failure to examine alternative causes dooms her opinions; Sherrod's reports incorporate no reliable methodology and apply no sound methodology to the facts of the case; Sherrod's internet statistics are confusing, irrelevant, and unreliable; Plaintiffs admit that legal conclusions are improper but Sherrod offers them anyway; and Plaintiffs' response does not show that Sherrod's reports are relevant.

### i.  *Daubert*

Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

---

[1] This Order assumes that the trial will actually proceed on April 19, 2021.  The Court noted in its trial setting that the case was set "as a backup to another civil case" (Dkt. #191).

*Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).   The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable.  *Daubert*, 509 U.S. at 590–91.

The Court considers many factors when determining whether to admit or exclude testimony.  *Id*. at 594.  When evaluating the reliability of expert testimony, the Court may look to: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Id.* at 593–94; *Pipitone*, 288 F.3d at 244.  Notably, the focus is on the "principles and methodology, not on the conclusions [the experts] generate."  *Daubert*, 509 U.S. at 595.

The Court remains mindful that the *Daubert* framework is "flexible."  *Id.* at 594.  Further, the test for determining reliability can adapt to the particular circumstances underlying the testimony at issue.  *Kuhmo*, 526 U.S. at 152.  Sherrod works in human resources.  While *Daubert* applies with equal force to scientific and non-scientific testimony, *see Pipitone*, 288 F.3d at 244 (citing *Kuhmo*, 526 U.S. at 147), not all the factors may be relevant in a case such as the one before the Court.

Sherrod does not purport to do any sort of testing.  Thus, many of the *Daubert* factors do not advance the purpose of ensuring the reliability of Sherrod's testimony.  The Court is persuaded that it should be guided by the overarching reliability goal of *Daubert*, rather than an inappropriate attempt at siphoning square facts into round factors.

Sherrod's supplemental report states, in conclusory terms, that her report meets the factors propounded in *Daubert*.  However, Sherrod's simple statements do not satisfy the burden placed

upon Plaintiffs to show that her report is, indeed, relevant and reliable.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only be the *ipse dixit* of the expert").  However, Sherrod's mere recitation of the factors also does not require the Court to strike the testimony either.

As a threshold matter, the Court will determine whether Sherrod is qualified to testify as an expert.  Sherrod is a human-resources consultant and has been employed as such since mid-2015.  Further, Sherrod acted as vice president of human resources for the United Way of Tarrant County for approximately three-and-a-half years.  For years before that, Sherrod worked in human resources with at least one other company.  Sherrod possesses both a college and post-graduate degree.  Sherrod also possesses certifications specific to human resources.  Ultimately, the Court finds that Sherrod has the experience necessary to opine on human-resource practices.

Next, the Court will address the reliability factors under *Daubert*.  Sherrod does not offer a scientific opinion that would lend itself to testing.  Sherrod does, however, utilize her knowledge and experience to reach conclusions.  Sherrod also offers insight into three rules that would, allegedly, have prevented Plaintiffs' damages.  Sherrod reaches these rules by analyzing recognizable and reliable sources of information regarding human resource expectations. Sherrod also offers information on how the rules could, and arguably should, be applied in the workplace setting. Sherrod relies on professional sources—including the EEOC and various regulations included in the CFR—to formulate her opinions.  Further, Sherrod notes that Defendants did not comply with the rules propounded in the report, and damages therefore resulted to Plaintiffs. Though the analytical gap is not strong between the facts of the case and Sherrod's opinions, the Court is unpersuaded that it is "too great" as to warrant exclusion of Sherrod's testimony.  *See*

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (noting that "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). Sherrod noted the evidence she considered, and thus the facts upon which Plaintiffs base their claims, concluding that the rules articulated within her report were not followed by Defendants. Sherrod also notes that Defendants' nonadherence to the rules injured Plaintiffs. Presumably, based upon the language in Sherrod's reports, she took the information contained within Plaintiffs' first amended complaint, jury demand, depositions of Defendants' corporate representatives, the report of and documents reviewed by Holt's expert, the written policies and procedures of Defendants, and witness confirmation of the existence of a hostile work environment to reach her conclusions. Because the Court does not find Sherrod's supplemental report unreliable under *Daubert*, the Court declines to strike her report and testimony on that ground. The Court will therefore continue its analysis.

### ii.  Plaintiff's Other Arguments

Plaintiffs assert that Sherrod's failure to examine alternative causes dooms her opinions. Further, Plaintiffs claim that Sherrod's reports incorporate no reliable methodology and apply no sound methodology to the facts of the case. Finally, Plaintiffs argue that Sherrod's proffered statistics are confusing, irrelevant, and unreliable.

### 1.  Failure to Examine Alternative Causes

"Under Texas law, if a plaintiff has evidence that a defendant's negligence is a proximate cause of an accident, the plaintiff need not make any attempt to rule out other proximate causes of the accident because '[t]here can be more than one proximate cause of an injury, and all persons whose negligent conduct contributed to the injury are responsible for it.'" *Michaels v. Avitech,*

*Inc.*, 202 F.3d 746, 753 (5th Cir. 2000) (quoting *Coleman v. Equitable Real Estate Inv. Mgmt.,*

*Inc.*, 971 S.W.2d 611 (Tex. App.—Dallas 1998)).

Defendants cite to *Michaels* for the proposition that "a necessary ingredient of an expert's determination of causation is the exclusion of alternative causes" (Dkt. #70 at p. 3) (internal quotation omitted).  Because Plaintiffs apparently do not contest the accuracy of that statement, Defendants contend, in essence, that they have conceded the point.  However, the Court cannot view this as a concession because *Michaels* does not stand for such a rule.  Rather, *Michaels* noted that "*res ipsa* [*loquitur*] also requires an exclusion of alternative causes."  *Michaels*, 202 F.3d at 754.  Regarding proximate cause, *Michaels* notes that a plaintiff need not rule out other proximate causes.  *See id.* at 753.  No facts indicate that Plaintiffs invoked *res ipsa*, and the Court declines to exclude Sherrod's testimony on the basis of an alleged "concession" that would result in an incorrect application of the law.

### 2.  Methodology

The Court has analyzed methodology in its consideration of the *Daubert* factors.  The Court noted that the Sherrod's methodology included various professional sources and her own experience in human resources.  Because the Court found the methodology acceptable under *Daubert*, it need not rehash the same issue here.

### 3.  Internet Sources

Defendants contend that Sherrod's internet statistics are confusing, irrelevant, and unreliable.  Specifically, Defendants claim that "Sherrod's resort to unrelated internet statistics on *nationwide* workplace violence is misplaced" because "[s]he makes no effort to relate those statistics to any of the Defendants or to any of the facts of *this* case" (Dkt. #70 at p. 6).

15

Federal Rule of Evidence 401 states "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  While the Court is persuaded that the first element is met—the Court notes that "the relevance bar pursuant to Federal Rule of Evidence 401 is low"—the same cannot be said for the second.  *Coates v. EC&R Dev., L.L.C.*, No. SA-13-CV-255-DAE, 2015 WL 8362996, at *2 (W.D. Tex. Dec. 8, 2015)

Defendants are correct in that Sherrod does not link the present case and the nationwide statistics.  Nor does Sherrod explain the relevance between the statistics and the present case.  Without any indication as to why the National Safety Council or workplace bullying is relevant in the present case, the Court sees no reason to admit the testimony.  Ultimately, the statistics would not assist the factfinder in deciding the case.  Thus, Sherrod will not be able to testify as to the national statistics.

### 4.  Impermissible Legal Conclusions

As an initial matter, "[e]xperts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court." *Little v. Tech Specialty Products, LLC*, 940 F. Supp. 2d 460, 467–68 (E.D. Tex. 2013).  The applicable law will be given to the jurors by the "spokesman of the law"—the judge—when the appropriate time comes.  *See Askanase v. Fatjo*, 103 F.3d 657, 673 (5th Cir. 1997).

Sherrod offers various conclusions in which she discusses the law.  However, Sherrod is not a lawyer.  Her expertise is in the human-resources field, not the legal field.  Any testimony offered by Sherrod on the law would be neither relevant nor helpful to the jury.  Sherrod's legal testimony will not aid the factfinder, and Plaintiffs have not met their burden in proving that the testimony is sufficiently reliable or relevant.

The Court will not allow Sherrod to testify about the law.  However, two of the three comments Defendants take issue with stand on their own notwithstanding the legal nature of the remarks—for instance, Sherrod could simply testify as to Defendants' lack of supervision and monitoring of the workplace.  The Court therefore determines that striking the second half of these sentences—"the enforcement of the laws" and "to enforce the law"—is sufficient to ensure Sherrod does not impermissibly testify as to the law on these particular topics.  The third sentence, however, proves more difficult.

In Sherrod's third sentence, she notes that corporations "must not allow harassment in the workplace based on race."  Inherently, that sentence has no impermissible legal conclusions.  Rather, it is the opinion of an expert in human resources.  It is the support Sherrod gives for the statement that is of particular concern to the Court.  *See Pagayon v. Exxon Mobile Corp.*, 536 S.W.3d 499, 507–08 (Tex. 2017).

*Pagayon* is a case in which a decedent's estate sought to hold an owner of a convenience store liable for negligent supervision.  *See id*. at 501–03.  Importantly, *Pagayan* did not concern any of the legal principles at issue here—namely, Title VII, 42 U.S.C. § 1981, or EEOC regulations.  Permitting Sherrod to rely on this case in her testimony would not only allow for an impermissible legal conclusion to come from an expert but would also essentially present an irrelevant area of the law to seep into the jury's consideration.  While the Court does not see an issue with Sherrod presenting her second rule to the jury, the Court will not allow her to support the rule with case law.  Instead, the Court will give the jury the applicable law when the time comes for them to make decisions.  The jury may then use the factual conclusions provided by Sherrod to assist in making its consideration, but the Court is mindful not to allow impermissible legal conclusions to come from anyone other than the Court.

### iii.   No Testimonial History

Sherrod's initial report did not contain the required list of other cases in which she has testified at trial or by deposition during the previous four years.  *See* FED. R. CIV. P. 26(a)(2)(B)(v). However, Sherrod's supplemental report satisfies that requirement.  Thus, this argument is moot.

"The Court's ruling on Sherrod's testimony in no way limits Defendants' ability to contradict her at trial.  *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Further, Defendants could file motions in limine, seeking to add an additional layer of protection for the jury from what Defendants believe is improper testimony.  Ultimately, Defendants are in no way left without alternative avenues to seek relief closer to the date of, or during, trial.

## II.   Attorneys

Defendants argue that Plaintiffs' designation of six attorneys'-fees experts present needlessly cumulative evidence.

The Court will not address attorney's fees until after trial in accordance with 42 U.S.C. § 1988.  *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[] 1981 . . . the court, in its discretion, may allowing the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .").  Because attorneys' fees expert will not testify at trial, the Court does not address Defendants' argument on unnecessarily cumulative experts at this time.

### CONCLUSION

It is therefore **ORDERED** that Defendants Rush Enterprises, Inc. and Rush Truck Centers of Texas, LP's Motion to Strike Plaintiffs' Expert Witness Designations of Coneisha L. Sherrod

and Cumulative Experts Designated to Testify on the Issue of Attorney's Fees (Dkt. #54) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Sherrod will not be able to testify as to the nationwide statistics outlined in her report.  Further, Sherrod may not testify as to the law—namely, she may not intertwine the law with her factual assertions as outlined in this Order.  Sherrod may also not testify as to the case law, specifically *Pagayon*, referenced in her second rule in accordance with this Order.

It is further **ORDERED** that the Court will address Defendants' argument regarding Plaintiffs' attorneys' fees experts in a post-trial order as the need arises.

**SIGNED this 8th day of March, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE